IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ESTATE OF JAMES SPRING, by KEITH SPRING,** *Administrator of the Estate of James Spring, deceased* | Case No. 1:21-cv-02098-PAB (lead) 1:21-cv-02124-PAB |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **THE MONTEFIORE HOME, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

Currently pending is Plaintiff Estate of James Spring's Motion for Remand.  (Doc. No. 12.)  Defendants The Montefiore Home, The Montefiore Foundation, Montefiore of Menorah Park, Menorah Park Foundation Bet Moshav Zekenim Hadati, and Menorah Park Center for Senior Living ("the Facility Defendants") filed a Memorandum in Opposition to the Estate's Motion on December 8, 2021, which Defendants Tina King and Marie Gelle joined.  (Doc. Nos. 14, 15.)  Defendant Ariel Hyman filed a separate Memorandum in Opposition to the Estate's Motion also on December 8, 2021, which is substantially identical to the Facility Defendants' Opposition.  (Doc. No. 16.)  The Estate filed a Reply in Support of its Motion on December 15, 2021.  (Doc. No. 17.)  All Defendants filed a Joint Sur-Reply on December 17, 2021.  (Doc. No. 18-1.)

Also pending is the Facility Defendants' Motion for Leave to File Declaration *Instanter,* filed on January 6, 2022, in response to the Estate's December 28, 2021 Notice of Supplemental Authority. (Doc. Nos. 19, 21.)  The Estate filed an Opposition to the Facility Defendants' Motion for Leave on January 13, 2022.  (Doc. No. 22.)

For the following reasons, the Estate's Motion for Remand is GRANTED and Defendants' Motion for Leave to File Declaration *Instanter* is DENIED.

I.  **Background**

   A.  **State Court Complaint**

On October 5, 2021, Keith Spring, on behalf of the Estate of James Spring, filed a Complaint against all Defendants in the Cuyahoga County Court of Common Pleas, alleging five claims. (Doc. No. 1-2, ¶¶ 20-48, 49-52, 53-55, 56-60, 61-62.) In its Complaint, the Estate alleges that James Spring was a resident at The Montefiore Home, a nursing home facility operated by the Facility Defendants, in October 2020 through the time of his death on October 11, 2020. (*Id.* at ¶ 3.) Defendant Hyman was the Nursing Home Administrator for the facility. (*Id.* at ¶ 8.) Defendant King was the Director of Nursing at the facility. (*Id.* at ¶ 9.) Defendant Marie Gelle was the Assistant Director of Nursing. (*Id.* at ¶ 10.)

After a short hospitalization, Spring arrived at the facility for rehabilitation. (*Id.* at ¶ 30.) At the hospital, and immediately prior to Spring's admission to the facility, he tested negative for COVID-19. (*Id.* at ¶ 31.) However, after a short stay at the facility, he was taken to a hospital where he was diagnosed with COVID-19. (*Id.* at ¶ 32.) Spring died a short time later of COVID-19. (*Id.* at ¶ 33.) The Estate alleges that Spring's only exposure to other individuals during his time at the facility was to facility employees. (*Id.* at ¶ 34.)

According to the Estate, the Defendants' negligence, recklessness, and/or willful and/or wanton conduct caused a COVID-19 outbreak at the facility, which in turn caused the deaths of multiple patients, including Spring. (*Id.* at ¶ 2.)

The Estate alleges that, although Defendants implemented certain COVID-19 protocols, Defendants failed to follow these precautionary measures and also failed to ensure adequate staffing levels within the facility. (*Id.* at ¶¶ 26-27, 37.) Further, the Estate alleges multiple times that

2

Defendants falsified COVID-19 test results. Specifically, the Estate alleges that King and Gelle "falsified test results, leading to a COVID-19 outbreak at the nursing home." (*Id.* at ¶ 11.) The Estate further alleges that the Facility Defendants' employees, as well as Hyman, King, and Gelle "either knowingly or at the direction of their employer or principal, submitted falsified COVID-19 tests." (*Id.* at ¶ 36.) According to the Estate, "test samples were submitted on behalf of patients that were blank, thereby coming back as 'negative.'" (*Id.*)

Based on these allegations, the Estate asserts five causes of action. In bringing these claims, the Estate makes certain allegations that are relevant here. In Count II, the Estate alleges that the aforementioned conduct of all Defendants outlined in Count I "constituted intentional misconduct or willful or wanton misconduct." (*Id.* at ¶ 52.) In Count III, the Estate alleges that as "a direct and proximate result of the wrongful conduct of all Defendants, jointly and/or severally, whether negligent, reckless, intentional, willful or wanton, James Spring suffered severe physical injuries" and "incurred significant pain and suffering, severe mental anguish, loss of enjoyment of life, and reasonable medical expenses." (*Id.* at ¶¶ 54-55.) In Count IV, the Estate alleges that as a result of Defendants' wrongful conduct, "whether negligent, reckless, intentional, willful or wanton," James Spring died, his next of kin suffered non-pecuniary and pecuniary losses and mental anguish, and his next of kin incurred burial and funeral expenses. (*Id.* at ¶¶ 58-60.)

    **B.**    **Notices of Removal**

On November 5, 2021, the Facility Defendants removed this action from the Cuyahoga County Court of Common Pleas to the United States District Court for the Northern District of Ohio. (Doc. No. 1.) In their Notice of Removal, the Facility Defendants asserted that the case was removable under 28 U.S.C. § 1441(a) pursuant to the Court's original federal jurisdiction under 28

U.S.C. § 1331.  (Doc. No. 1, ¶ 4.)  The Facility Defendants claimed that, on its face, the Estate's action arose under the federal Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d (the "PREP Act") and claimed that the PREP Act completely preempted the Estate's state law claims.  (*Id.* at ¶¶ 5-9.)  The Facility Defendants' counsel conferred with King's, Gelle's, and Hyman's counsels regarding removal, and King, Gelle, and Hyman all consented.  (*Id.* at ¶ 12.)

On November 8, 2021, three full days after the Facility Defendants removed this action to this Court, Defendant Hyman separately removed this action again to this Court.  On November 24, 2021, the Court consolidated Hyman's separately-removed case with the Facility Defendants' case in the interest of convenience to the parties and economy in judicial administration.   (*See* ECF Entry 11/24/2021.)  In his Notice of Removal, Hyman reasserts the same argument regarding removal under 28 U.S.C. § 1441(a), as set forth in the Facility Defendants' Notice of Removal.  (*See* Case No. 1:21-cv-02124-PAB, Doc. No. 1, ¶ 4.)  Hyman's Notice of Removal also includes a single reference to 28 U.S.C. § 1442(a), the federal officer removal statute, but no argument associated therewith.  (*Id.* at ¶ 12, "Original jurisdiction is also through an action pursuant to 28 U.S.C. § 1442(a)(1).")

**C.**  **Motion for Remand**

On November 24, 2021, the Estate filed a Motion for Remand.  (Doc. No. 12.)  The Facility Defendants filed an Opposition on December 8, 2021, in which King and Gelle joined.  (Doc. No. 14, 15.)  Hyman filed a separate Opposition on December 8, 2021, although his Opposition is nearly identical to the Facility Defendants' Opposition. (Doc. No. 16.)  The Estate filed a Reply in Support of its Motion on December 15, 2021.  (Doc. No. 17.)  Thereafter, all Defendants filed a Joint Sur-Reply on December 17, 2021.  (Doc. No. 18-1.)

4

On December 28, 2021, the Estate filed a Notice of Supplemental Authority. (Doc. No. 19.) On January 6, 2022, the Facility Defendants filed a Response to the Estate's Supplemental Authority, as well as a Motion for Leave to File Declaration *Instanter*, seeking to file the Declaration of former facility Chief Operating Officer Richard Schwalberg to refute certain analyses set forth in the Estate's Supplemental Authority. (Doc. No. 21.) The Estate filed an Opposition to the Facility Defendants' Motion on January 13, 2022. (Doc. No. 22.)

**II.    Standard of Review**

Under 28 U.S.C. § 1441(a), defendants may remove a civil action from a state court only when the federal court has original jurisdiction over the claims alleged in the state court complaint. That is, any civil case filed in state court may be removed to federal court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Absent jurisdiction based upon diversity of citizenship (28 U.S.C. § 1332), federal question jurisdiction under 28 U.S.C. § 1331 is required. *Caterpillar*, 482 U.S. at 392.

"The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Federal courts are courts of limited jurisdiction and possess only the power authorized by the United States Constitution or by statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "'[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand.'" *Eastman*, 438 F.3d at 549-50 (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996) (further citation omitted)).

5

Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law if: (1) "federal law creates the cause of action[,]" or (2) "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)).

The presence or absence of federal-question jurisdiction is generally governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of her claims, and she may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425 (internal citation omitted). "Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be 'recharacterized' as a federal claim for the purposes of removal." *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (quoting *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003)).

The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Further, "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and a defendant may not [generally] remove a cause to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law[.]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (internal citations and quotation marks omitted) (alteration and emphasis in original); *see also Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Local 704*, 25 F.3d 1308, 1313 (6th Cir. 1994) (defensive assertion of federal statute "does not raise a federal question for removal purposes").

**III.     Analysis**

Defendants argue that the PREP Act completely preempts the Estate's state-law claim for willful misconduct and, accordingly, this action should not only be removed to federal district court but also transferred to the United States District Court for the District of Columbia. (Doc. No. 14, PageID# 137-45.) As set forth below, this Court finds that the Estate's claims fall outside the scope of the PREP Act and, accordingly, must be remanded to state court. Therefore, this Court does not consider the complete preemption issue.

**A.     The PREP Act**

The PREP Act empowers the Secretary of the Department of Health and Human Services to "'to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency.'" *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 535 F. Supp. 3d 709, 715 (M.D. Tenn. Apr. 21, 2021) (citing *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-cv-1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (citing 42 U.S.C. § 247d(a)); *see also* 42 U.S.C. § 247d(b)(1)). If the Secretary determines that a public health emergency exists, the Secretary may make a declaration recommending "manufacture, testing, development, distribution, administration, or use of one of more covered countermeasures" to combat the emergency. 42 U.S.C. § 247-6d(b)(1). In March 2020, the Secretary declared SARS-CoV-2 and the resulting disease, COVID-19, to be a public health emergency under the PREP Act. *Bolton*, 535 F. Supp. 3d at 715.

The PREP Act, by and large, is an immunity statute. It provides that covered persons "shall be immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered

countermeasure." 42 U.S.C. § 247d-6d(a)(1). The only exception to the PREP Act's immunity is willful misconduct claims. 42 U.S.C. § 247d-6d(d)(1) ("[T]he sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . ."). However, to fall under the PREP Act, a willful misconduct claim must still involve the "administration" or "use" of a "covered countermeasure." *See Singer v. Montefiore, et al.*, --- F. Supp. 3d, ---, 2021 WL 6111671, at *3 (N.D. Ohio Dec. 27, 2021) (appeal docketed 3/28/2022) ("Put another way, the path to the [willful misconduct] exception in subsection (d) of the statute runs through subsection (a), which requires ["administration" or "use" of] covered countermeasures."); *see also Rosen v. Montefiore, et al.*, --- F. Supp. 3d ---, ---, 2022 WL 278106, at *3 (N.D. Ohio Jan. 31, 2022) (appeal docketed 3/2/2022).

"Covered countermeasures" are defined as qualified pandemic or epidemic products, drugs and biological products authorized for emergency use, security countermeasures, and respiratory protective devices. *See* 42 U.S.C. § 247d-6d(i)(1). The Secretary's March 2020 declaration identified covered countermeasures to include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020).

### B. The Estate's Claims Do Not Fall Under the PREP Act

In its Motion, the Estate argues that none of its claims fall under the PREP Act, and therefore are not subject to federal subject matter jurisdiction, because it does not allege any injury related to the administration or use of a covered countermeasure. (Doc. No. 12, PageID# 76.) The Estate argues that myriad other federal district courts have concluded that allegations of inaction or failure to provide adequate protection or countermeasures fall outside the PREP Act. (*Id.* at PageID# 77-78.) The Estate argues that its allegations are no different. (*Id.*) It asserts that its allegations against Defendants stem from the Defendants' "reckless failures and intentional wrongdoing," not their actions in administering a covered countermeasure. (*Id.*)

In their Opposition[1], Defendants argue that the Estate's claims specifically relate to the PREP Act because it alleges that James Spring's injuries and death "were related" to Defendants' alleged willful falsification of James Spring's COVID-19 test results. (Doc. No. 16, PageID# 136.) Defendants contend that the PREP Act does not require that the use or administration of a covered countermeasure be the exclusive cause of death, but only that the Estate's claims "relate to" the administration of a countermeasure. (*Id.*)

The Court concludes that none of the Estate's claims fall under the PREP Act because it does not assert that James Spring's death was "caused by, arose out of, related to, or resulted from" the "administration" or "use" of the identified "covered countermeasures." *See* 42 U.S.C. §§ 247d-6d(a), 247d-6d(d). First, to the extent the Estate's claims are based on Defendants' failure to provide appropriate infection control and prevention measures, including by failing to provide medical services, failing to provide appropriate staffing, and in failing to assess its ability to provide suitable

---

[1] Because Hyman's Opposition is substantively identical to the Facility Defendants' Opposition, all citations will be to the Facility Defendants' Opposition.

9

care for James Spring, such claims fall outside the scope of the PREP Act. (*See* Doc. No. 1-2, ¶¶ 37-39.) Policies, procedures, protocols, and staffing assignments are not covered countermeasures. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020). *See also, e.g., Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3.

Second, the Estate's claims are based on Defendants' inaction, not the "administration" or "use" of covered countermeasures. The Secretary defines "administration" of a covered countermeasure to mean the "*physical* provision of the countermeasures to recipients." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020) (emphasis added). Here, the crux of the Estate's claims is that James Spring died because Defendants *failed* to take reasonable steps to protect him, and other residents, by implementing infection control and prevention policies and procedures. Defendants' failure to act cannot be construed to be administration—i.e., physical provision—of any kind of covered countermeasure. *See, e.g., Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3 (concluding that the plaintiffs' claims were based on the defendants' failure to administer or use handwashing, masks, and testing devices, and therefore did not fall within the scope of the PREP Act); *Dupervil v. Alliance Health Ops., LLC*, 516 F. Supp. 238, 255 (E.D.N.Y. 2021) (concluding that the defendants' alleged failures, including failing to take steps to separate residents, enforce social distancing, restrict visitors, ensure adequate staffing levels, enforce mask-wearing, and screening for COVID-19 symptoms among building entrants, "cannot be said to be administering—or even prioritizing or purposefully allocating—a drug, biological product, or device" such that they fall within the ambit of the PREP Act); *Winn v. Cal. Post Acute LLC*, 532 F. Supp. 3d 892, 899 (C.D.

Cal. 2021); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 531 (D.N.J. 2020), *aff'd sub nom. Maglioi v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021) (observing that the PREP Act "is designed to protect those who employ countermeasures, **not those who decline to employ them**") (emphasis added); *Segel v. Sunray Healthcare Center*, No. CV 21-7468 DSF, 2021 WL 5755639, at *2 (C.D. Cal. Dec. 2, 2021) (appeal docketed 12/30/2021) ("The Plaintiff here complains, in part, of a *failure to use* covered countermeasures. If Defendants' argument were accepted, patients whose healthcare providers did nothing would have worse recourse to compensation than patients whose healthcare providers tried in good faith to apply covered countermeasures."); *Hopman v. Sunrise Villa Culver City*, No. 2:21-cv-01054-RGK-JEM, 2021 WL 1529964, at *5 (C.D. Cal. Apr. 16, 2021); *Shapnik v. Hebrew Home for the Aged at Riverdale*, 535 F. Supp. 3d 301, 322 (S.D.N.Y. Apr. 26, 2021).

Further, the Secretary made clear that only a narrow type of "inaction claim" is viable under the PREP Act: a "purposeful allocation" claim, wherein there are limited covered countermeasures available, and there was a failure to administer a covered countermeasure to one individual because it was administered to another individual. Fourth Amended Declaration, 85 Fed. Reg. 79190, 79,197 (Dec. 9, 2020). Here, there are no allegations that Wilson's death was the result of purposeful allocation of personal protective equipment or care to other individuals. *See, e.g., Winn*, 532 F. Supp. 3d at 899.

Finally, falsifying COVID-19 test results is not the "administration" or "use" of a covered countermeasure. *See Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *3 (concluding same). Nor is intentionally obscuring the number of active COVID-19 cases at the facility to hide a COVID-19 breakout within the facility the "administration" or "use" of a covered countermeasure. Though the

Estate's allegations regarding Defendants' falsification of test results references COVID-19 tests, the Estate does not allege that Defendants injured James Spring by physically providing him a COVID-19 test. Rather, the Estate's allegations revolve around Defendants' (alleged) decision to suppress accurate COVID-19 case counts and falsify test results, misleading residents and their families. Indeed, the Estate explicitly alleges that the Facility Defendants' employees, as well as Hyman, King, and Gelle, submitted test samples "on behalf of patients that were *blank*, thereby coming back as 'negative.'" (Doc. No. 1-2, ¶ 36, emphasis added.) A "blank" test sample indicates that there was *no* "administration"—i.e., physical provision—or "use" of a covered countermeasure because the test contained no patient sample to begin with. Submitting blank tests with the express intention of generating a false negative result is not "related to" the administration of a covered countermeasure. The Estate's allegation that Defendants faked negative COVID-19 tests by testing blank samples merely sets out the specific methodology Defendants allegedly used to falsify negative test results and hide the COVID-19 outbreak coursing through their facility. Thus, it cannot be said that Defendants' fake test results "related to" the administration of a covered countermeasure. The Court agrees with the *Rosen* court that "[t]his is not conduct contemplated within the scope of the Act." *Id.*

Finally, the Court is unpersuaded by Defendants' assertion that the Estate's claims "relate to" the administration of a covered countermeasure because it "explicitly alleges" that James Spring's injuries and death were related to improper administration or "improper use of COVID-19 diagnostic tests" in paragraph 28 of the Complaint. (Doc. No. 14, PageID# 136.) Defendants misrepresent the Estate's allegations. The Estate does not allege the "improper *use*" or "*administration*" of COVID-19 diagnostic tests. The Complaint is devoid of any allegation that James Spring was injured due to Defendants' improper "administration" or "use" of a COVID-19 test. The Secretary defines

"administration" of a covered countermeasure to mean the "*physical* provision of the countermeasures to recipients." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020) (emphasis added). As the Estate argues in its Reply to the Facility Defendants' Response to Supplemental Authority, "[t]he Defendants did not injure or kill someone by swabbing their nose with a PCR test," or otherwise injure James Spring due to Defendants' physical provision of a COVID-19 test. (Doc. No. 22, PageID# 227.)

Rather, the Estate alleges in paragraph 28 that "Covid-19 test *results* were falsified or improperly ran by all Defendants." (Doc. No. 1-2, ¶ 28, emphasis added.) This allegation clearly relates to the Estate's subsequent allegation that Defendants intentionally submitted blank test samples on patients' behalf so that the results would come back as negative. (*Id.* at ¶ 36.) In other words, the Estate alleges that James Spring and other facility residents died because Defendants falsified and covered up COVID-19 test *results* by intentionally submitting blank test samples and misinforming residents of their COVID-19 status, not because Defendants administered or used the COVID-19 tests improperly. The Court construes the Estate's allegation that Defendants "improperly ran" COVID-19 test results to be part and parcel of its allegations that Defendants oversaw an intentional effort to falsify and hide positive COVID-19 test results from residents to obscure the facility's COVID-19 outbreak.

Accordingly, the Court concludes that the Estate's claims do not fall within the scope of the PREP Act and, therefore, are not subject to federal question jurisdiction under § 1331 because they do not relate to the administration or use of covered countermeasures. Because the Court concludes

that the Estate's claims do not fall within the PREP Act, the Court does not consider the complete preemption issue.

### C. Federal Officer Removal

Under 28 U.S.C. § 1442(a), certain officers of the United States may remove actions to federal court. 28 U.S.C. § 1442(a). To do so, the officer-defendant must first establish he is a person within the meaning of the statute who "act[ed] under [a federal] officer[.]" *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (internal quotations omitted). Second, he must also establish that he "performed the actions for which [he] is being sued under color of [federal] office[.]" *Id.* (internal quotations omitted). Finally, he must show that he "raised a colorable federal defense." *Id.* Private parties may invoke the federal officer removal statute if they can demonstrate that they satisfy these requirements. *Id.*

First, the Facility Defendants, King, and Gelle plainly did not raise § 1442(a) as a ground for removal. (*See* Doc. No. 1.) They may not raise a new substantive ground for removal in opposing the Estate's Motion for Remand. *See Hahn v. Rauch*, 602 F. Supp. 2d 895, 909 (N.D. Ohio Aug. 15, 2008) ("A defendant cannot argue a new substantive ground as a basis for removal in opposing remand.") (additional citation omitted).

Second, to the extent that Hyman raised § 1442(a) as a ground for removal,[2] his argument is not well-taken. Hyman asserts that he acted under federal authority in responding to the COVID-19

---

[2] It is unclear whether Hyman properly raised § 1442(a) as a ground for removal. First, Hyman's sole mention of § 1442(a) in his Notice is nearly impossible to parse:

> This case is removable under 28 U.S.C.A. § 1441(a) on the basis of 'original jurisdiction' because Plaintiff's Complaint asserts a claim 'arising under' federal law within the meaning of § 1331. **Original jurisdiction is also through an action pursuant to 28 U.S.C. §1442(a)(1).** The Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

14

pandemic as an employee of a nursing home that participates in the Medicare and Medicaid programs. (Doc. No. 14, PageID# 145.) This assertion lacks merit. Hyman cannot show that he acted under federal authority within the meaning of the removal statute. *See Maglioli*, 16 F.4th at 404 (holding that nursing home defendants could not seek removal based on federal officer removal statute). At most, Hyman complied with regulations and orders promulgated by CMS during the pandemic. He is not a government contractor, is not delegated federal authority, and did not provide any service that the federal government would otherwise provide. *See Singer*, --- F. Supp. 3d at ---, 2021 WL 6111671, at *7; *Rosen*, --- F. Supp. 3d at ---, 2022 WL 278106, at *5 (internal citations omitted); *Hudak v. Elmcroft of Sagamore Hills, et al.*, --- F. Supp. 3d ---, ---, 2021 WL 7966603, at *13 (N.D. Ohio Aug. 19, 2021); *Segel*, 2021 WL 5755639, at *1. Therefore, Hyman may not remove this case to federal court under § 1442(a).

    **D.**    **Defendants' Motion for Leave to File Declaration *Instanter***

On December 28, 2021, the Estate filed a Notice of Supplemental Authority, directing the Court's attention to a recently issued decision in a substantially similar consolidated case against these same Defendants, *Singer v. Montefiore, et al.* (Doc. No. 19.) The *Singer* court concluded that the plaintiffs' state-law claims should be remanded because the defendants failed to "place[ ] sufficient information in the record from which the Court can determine that these countermeasures meet the statutory definition or the Secretary's emergency declaration." *See Singer*, --- F. Supp. 3d at ---, 2021 WL 6111671, at *6. The Facility Defendants filed a Response to Plaintiff's Notice of

---

(Case No. 1:21-cv-2124-PAB, Doc. No. 1, ¶ 12, emphasis added.) Further, Hyman offers no further argument regarding federal officer removal jurisdiction in his Notice. (*Id.*) Second, the Facility Defendants already removed this case **three days** prior to Hyman's removal, **with Hyman's consent.** (Doc. No. 1, ¶ 12, ". . . Defendants Ariel S. Hyman, Tina King, and Marie Gelle consent to removal of this action to the United States District Court for the Northern District of Ohio, Eastern Division.") Thus, Hyman's consent to the 11/5/2021 removal implies that he consented to removal on the basis of federal question jurisdiction *only*.

Supplemental Authority, and Motion for Leave to File Declaration *Instanter*, seeking to file a declaration from former Montefiore Chief Operating Officer Richard Schwalberg to confirm that all facility COVID-19 tests were FDA-authorized.  (Doc. No. 21, PageID# 218.)

The Court's rationale for remanding the Estate's Complaint is different from that of the *Singer* court.  Therefore, the Facility Defendants' proposed declaration is irrelevant to the Court's analysis and resolution of the pending Motion for Remand.  Accordingly, the Facility Defendants' Motion for Leave is denied.

## IV. Conclusion

For the reasons set forth above, the Estate's Motion for Remand is GRANTED.  The Facility Defendants' Motion for Leave to File Declaration *Instanter* is DENIED.  The case is REMANDED to the Court of Common Pleas of Cuyahoga County, Ohio, from which it was removed.

**IT IS SO ORDERED.**

Date: April 14, 2022

*s/ Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE